**UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF TEXAS**

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ X

Hermes Law, P.C. and Syzygy Legal Tech, Inc. d/b/a   :
ClaimDeck,   :
   :
                  Plaintiffs,   :
   :
          against   :   Civil Action No.: 3:24-cv-00624-K
   :
Silvia Diaz-Roa,   :
   :
               Defendant.   :

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ X

<u>**PLAINTIFFS', HERMES LAW, P.C. AND SYZYGY LEGAL TECH, INC. d/b/a**</u>
<u>**CLAIMDECK'S, OPPOSED MOTION TO COMPEL ARBITRATION, AND**</u>
<u>**ALTERNATIVELY, MOTION TO STRIKE DEFENDANT'S EXHIBITS AND**</u>
<u>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>

139804654.8

## <u>TABLE OF CONTENTS</u>

I.   Factual Background ........................................................................................................ 1

II.  Opposed Motion to Compel Arbitration ...................................................................... 3

    A. Certificate of Conference ...................................................................................... 3

    B. Standard of Review ................................................................................................ 3

    C. The Parties Have a Valid Arbitration Agreement .................................................. 4

    D. The parties' claims are within the scope of the binding arbitration agreement. ................. 5

    E. The arbitrator(s) decide arbitrability of all claims. ............................................... 7

    F. The Court should compel arbitration of all claims in all courts. ............................ 8

III. Summary of Grounds to Deny Defendant's Motion to Dismiss .................................. 9

IV.  Standard Of Review Under Rule 12(b)(6) ............................................................... 10

V.   Argument and Authorities ......................................................................................... 11

    A. The Court should strike the extraneous exhibits attached to Defendant's motion............ 11

        1. Plaintiffs do not refer to the extraneous exhibits in Plaintiffs' complaint. .................. 12

        2. The extraneous exhibits are not central to Plaintiffs' claims. ...................................... 12

    B. This Court has broad discretion to grant declaratory relief to Plaintiffs. ........................... 13

        1. An actual controversy exists between the parties. ........................................................ 14

        2. This Court has the authority to grant declaratory relief to Plaintiffs. ......................... 15

        3. This Court should exercise its broad discretion to accept jurisdiction over the declaratory relief Plaintiffs seek. ................................................................................. 16

            a. Absent a pending parallel state court action, this Court should exercise its discretion    to decide this declaratory judgment action. .............................................. 17

            b. There are no inequities against Defendant if the parties litigate the disputes in this forum. ........................................................................................................................ 17

            c. Litigating any lawsuit in this forum is most efficient because this is where a majority of the witnesses and evidence are located. .................................................. 20

    C. Under the first-to-file rule, this Court should hear the disputes and determine the fate of the SDNY lawsuit. .................................................................................................. 21

VI.  Conclusion................................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**......................................................................................................................**Page(s)**

*In re 24R, Inc.*,
    324 S.W.3d 564 (Tex. 2010).......................................................................................5

*Admiral Ins. Co. v. Little Big Inch Pipeline Co., Inc.*,
    496 F. Supp. 2d 787 (W.D. Tex. 2007).....................................................................20

*Am. Univ. Sys. v. Am. Univ.*,
    858 F. Supp. 2d 705 (N.D. Tex. 2012) (Lindsay, J.) ..............................................18

*Amerada Petroleum Corp. v. Marshall*,
    381 F.2d 661 (5th Cir. 1967) ....................................................................................22

*Anderson v. Dall. Cnty.*,
    No. 3:05–cv–1248–G, 2007 WL 1148994 (N.D. Tex. Apr. 18, 2007) (Fish, J.)....12

*Antero Res. Corp. v. C & R Downhole Drilling, Inc.*,
    No. 4:16-CV-00668-Y, 2019 WL 13193898 (N.D. Tex. July 22, 2019)
    (Means, J.).................................................................................................................11

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)....................................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................10

*Atl. Cas. Ins. Co. v. Ramirez*,
    651 F. Supp. 2d 669 (N.D. Tex. 2008) (Stickney, J.) .............................................18

*AXA Re Prop. & Cas. Ins. Co. v. Day*,
    162 F. App'x .......................................................................................................14, 15

*In re Bank One, N.A.*,
    216 S.W.3d 825 (Tex. 2007).......................................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................10

*Cadle Co. v. Whataburger of Alice, Inc.*,
    174 F.3d 599 (5th Cir. 1999) ....................................................................................21

*Canatxx Gas Storage L.T.D. v. Silverhawk Capital Ptnrs., LLC.*,
    No. H-06-1330, 2006 U.S. Dist. LEXIS 48430 (S.D. Tex. 2006) (Rosenthal,
    J.)................................................................................................................................17

*Chapa v. Mitchell*,
No. A-05-CV-769-JN, 2005 WL 2978396 (W.D. Tex. Nov.4, 2005) .............................22, 23

*Clark v. Nordstrom, Inc.*,
Civil Action No. 3:18-CV-2100-D, 2019 U.S. Dist. LEXIS 126244 (N.D. Tex.
2019) (Fitzwater, J.) ...........................................................................................................8

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) .......................................................................................10, 11

*In re Complaint of Hornbeck Offshore Corp.*,
981 F.2d 752 (5th Cir. 1993) ........................................................................................5, 6, 7

*Data Mgmt. v. Control Module*,
No. 3:07-CV-0966-O, 2008 U.S. Dist. LEXIS 139476 (N.D. Tex. 2008)
(Sanderson, J.) ..............................................................................................................16, 17

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985) ........................................................................................................3, 8

*Diaz-Roa v. Hermes Law P.C.*,
Case No. 1:24-cv-02105-LJL (S.D.N.Y.) ................................................................. *passim*

*Doubletree Partners, L.P. v. Land Am. Am. Title Co.*,
No. 3-08-CV-1547-O, 2008 WL 5119599 (N.D. Tex. Dec. 3, 2008) (Kaplan,
J.) ...................................................................................................................................22, 23

*Ferguson v. Extraco Mortg. Co.*,
264 F. App'x 351 (5th Cir. 2007) .....................................................................................13

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ............................................................................................................7

*Fleetwood Enters. Inc. v. Gaskamp*,
280 F.3d 1069 (5th Cir. 2002) ...........................................................................................4

*Gemmy Industries Corp. v. Blue Ridge Designs, Inc.*,
No. 3-99-CV-0008-G, 1999 WL 58785 (N.D. Tex. Feb.1, 1999) (Fish, J.) ...........................23

*Graves v. BP America, Inc.*,
568 F.3d 221 (5th Cir. 2009) .............................................................................................4

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
921 F.3d 522 (5th Cir. 2019) .............................................................................................4

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) .........................................................................................................8

*Ironshore Specialty Ins. Co. v. Tractor Supply Co.*,
  624 F. App'x 159 (5th Cir. 2015) ...................................................................17, 19

*J. S. & H. Constr. Co. v. Richmond Cty. Hosp. Auth.*,
  473 F.2d 212 (5th Cir. 1973) ...........................................................................3

*Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*,
  677 F.2d 1045 (5th Cir.1982) ..........................................................................10

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ...........................................................................10

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
  453 B.R. 645 (N.D. Tex. 2011) (Lynn, J.)....................................................12, 13

*Koch Project Sols., L.L.C. v. All. Process Partners, L.L.C.*,
  No. 21-20093, 2022 U.S. App. LEXIS 31355 (5th Cir. 2022) ...............................20

*Kubala v. Supreme Prod. Servs., Inc.*,
  830 F.3d 199 (5th Cir. 2016) ..........................................................................4, 7

*Lizalde v. Vista Quality Mkts.*,
  746 F.3d 222 (5th Cir. 2014) ..........................................................................4, 5

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ...........................................................................10

*Lowrey v. Citigroup Glob. Mkts.*,
  Civil Action No. 3:10-CV-1823-K, 2011 U.S. Dist. LEXIS 175292 (N.D. Tex.
  2011) (Kinkeade, J.)........................................................................................4

*Mar-Len of La., Inc. v. Parsons-Gilbane*,
  773 F.2d 633 (5th Cir. 1985) ..........................................................................6, 7

*McLoba, Inc. v. Peregoy*,
  2020 WL 10456914 (E.D. Tex. November 9, 2020) ...........................................18

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007).......................................................................................14

*Mission Insurance Company v. Puritan Fashions Corporation*,
  706 F.2d 599 (5th Cir. 1983) ...........................................................................18

*Morgan v. Swanson*,
  659 F.3d 359 (5th Cir. 2011) ...........................................................................11

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
  781 F.3d 182 (5th Cir. 2015) ...........................................................................10

*Neese v. Becerra*,
    640 F. Supp. 3d 668 (N.D. Tex. 2022) (Kacsmaryk, J.) ........................................................15

*Orix Credit Alliance, Inc. v. Wolfe*,
    212 F.3d 891 (5th Cir. 2000) ........................................................................................14

*Petrofac, Inc. v DynMcDermott Petroleum Operations Co.*,
    687 F.3d 671 (5th Cir. 2012) ..........................................................................................7

*Primerica Life Ins. Co. v. Cruz*,
    Civil Action No. 3:21-CV-02419-E, 2023 U.S. Dist. LEXIS 11611 (N.D. Tex.
    2023) (Brown, J.) ........................................................................................................15

*Pro Mineral, LLC v. Marietta*,
    Civil Action No. 3:21-CV-02773-E, 2023 U.S. Dist. LEXIS 38490 (N.D. Tex.
    2023) (Brown, J.) ................................................................................................11, 12

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) .........................................................................................................7

*Scanlan v. Tex. A & M Univ.*,
    343 F.3d 533 (5th Cir.2003) ......................................................................................13

*Seattle Bank v. Dulworth*,
    Civil Action No. 4:22-cv-01036-O, 2023 U.S. Dist. LEXIS 230902 (N.D. Tex.
    2023) (Ray, J.).............................................................................................................15

*Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*,
    767 F.2d 1140 (5th Cir. 1985) ..................................................................................5, 6

*Sherwin-Williams Co. v. Holmes Cty.*,
    343 F.3d 383 (5th Cir. 2003) ............................................................................. *passim*

*St. Paul Ins. Co. v. Trejo*
    39 F.3d 585 (5th Cir. 1994) ............................................................................... *passim*

*Texas Employers' Ins. Assoc. v. Jackson*,
    862 F.2d 491 (5th Cir.1988) ......................................................................................19

*TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*,
    667 S.W.3d 694 (Tex. 2023).........................................................................................7

*In re Toyota Hybrid Brake Litig.*,
    2020 WL 6161495 ......................................................................................................22

*Travelers Ins. Co. v. La. Farm Bureau Fed'n*,
    996 F.2d 774 (5th Cir. 1993) .............................................................13, 15, 16, 18

*Walsh v. Peterson*,
   No. 4:21-CV-867, 2022 WL 3088086 (E.D. Tex. Aug. 3, 2022) ...........................................22

*Wells Fargo Bank, N.A. v. W. Coast Life Ins. Co.*,
   631 F. Supp. 2d 844 (N.D. Tex. 2009) (Lynn, J.) ...................................................................21

**Statutes**

9 U.S.C.A. § 2 .................................................................................................................................3

9 U.S.C.A. § 3,4 .............................................................................................................................8

Declaratory Judgment Act .......................................................................................................3, 13

Federal Arbitration Act .....................................................................................................3, 4, 5, 8

Fed. R. Civ. P. 8(a)(2) ...................................................................................................................10

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1, 9, 10, 11

Plaintiffs Hermes Law, P.C. and Syzygy Legal Tech, Inc. d/b/a ClaimDeck move to compel arbitration of all matters in dispute between the parties under the parties' agreement to arbitrate all disputes.

Alternatively, if the Court does not stay or dismiss the case to order the parties to arbitrate and the Court takes up Defendant's motion to dismiss, the Court should strike the exhibits attached to Defendant's motion to dismiss, which the Court may not consider in deciding a Rule 12(b)(6) motion, and deny Defendant's motion to dismiss.

In support, Plaintiffs would show the Court as follows:

## I.   FACTUAL BACKGROUND

In 2017, Hermes Law hired Defendant to perform clerical tasks at the firm's Dallas, Texas office. Compl. at ¶ 10.  Approximately eighteen months after Defendant began working at Hermes Law, Defendant enrolled in a graduate program at Yale University, but continued to work for Hermes Law as a part-time independent contractor. *Id.* at ¶¶ 14-15.

On February 2, 2018, Defendant signed a binding arbitration agreement with Hermes Law to arbitrate "all claims or controversies … whether or not arising out of [Defendant's] employment or its termination, that [Hermes Law] may have against [Defendant] or that [Defendant] may have against [Hermes Law], its employees or agents. **Ex. A** at APP 0042-45.

On December 22, 2020, Hermes Law sent Defendant an offer letter which provided that Defendant would assume the title of Project Manager and would be seconded to work with Syzygy. *Id.* at ¶ 21. In conjunction with the offer letter, Syzygy also granted Defendant a nonqualified stock option ("NQSO") that granted Defendant the right to acquire Syzygy shares pursuant to a vesting schedule. *Id.* at ¶¶ 23-26; *see also* Compl. Ex. 1. To exercise an option, Defendant was required to pay Syzygy $1.01 per share. Compl. Ex. 1 at 1. The NQSO provided that if Hermes Law terminated

Defendant's employment for cause Defendant would forfeit all unexercised options. Compl. at ¶ 28.

In June 2021, Defendant graduated from Yale. *Id.* at ¶ 36. Instead of returning to Dallas as Defendant had agreed, Defendant decided to move to New York.  *Id.* at ¶ 18. Upon returning to work full time, Defendant increasingly found herself in conflict with Plaintiffs' business objectives because Defendant (1) took several actions that harmed the companies' reputations or otherwise created significant risk, (2) routinely flaunted Defendant's negotiated remote working policy, (3) demonstrated an increasing lack of respect for Defendant's coworkers, management, customers, and others in the industry; and (4) lacked the skillset necessary to successfully perform Defendant's job duties. *Id.*at ¶¶ 36-50.

On February 9, 2024, Hermes Law terminated Defendant's employment for cause. *Id.* at ¶ 56. Because Defendant had not exercised her options at the time of the termination, Defendant forfeited all unexercised options. *Id.* at ¶¶ 57-58.

Following Defendant's firing, Defendant sent Plaintiffs a notice directing Plaintiffs to preserve documents relating to the termination. *Id.* at ¶ 65. It therefore appeared to Plaintiffs that Defendant was disputing her firing and the determination of cause so Plaintiffs commenced this action seeking a declaration that (1) Plaintiff lawfully terminated Defendant for cause, (2) as a result of Defendant's termination for Cause, Defendant forfeited any rights she had to the unexercised option shares, and (3) Defendant does not presently own any shares in Syzygy. *See generally*, *id.* at ¶¶ 61-83. On March 18, 2024, Defendant was personally served in this action. *See* Dkt. No. 9.

Plaintiffs were obviously correct that an arbitrated or otherwise litigated determination of these disputed issues is necessary because, shortly after Plaintiffs served Defendant in this action,

instead of answering the instant lawsuit Defendant initiated a new lawsuit **over the same issues** in a New York federal court. *See* Complaint, *Diaz-Roa v. Hermes Law P.C.*, Case No. 1:24-cv-02105-LJL (S.D.N.Y.) (the "SDNY Complaint"). In light of Defendant's request this Court abstain from exercising the jurisdiction this Court clearly has, it is important to note that **there are no pending state court actions between the parties** *and there never have been any*. Accordingly, Defendant requests this Court abstain from addressing all matters in this Court in favor of Defendant's later-filed suit in the Southern District of New York.

## II. OPPOSED MOTION TO COMPEL ARBITRATION

After bringing this action to determine the parties' rights and obligations under the Declaratory Judgment Act, Plaintiffs recognized the disputed issues between the parties are subject to mandatory arbitration. As such, on May 13, 2024, Plaintiffs initiated arbitration proceedings against Defendant with the American Arbitration Association, as required under the parties' arbitration agreement. Federal courts are required to enforce arbitration agreements in cases where the claims in dispute fall within the scope of that agreement, as is the case here. Therefore, the Court should order Defenant to arbitrate all disputed issues between the parties and stay or dismiss this lawsuit pending the outcome of the arbitration.

### A.  Certificate of Conference

Plaintiffs' counsel conferred with Defendant's counsel on April 26, 2024 regarding the relief sought by this motion. Defendant opposes the relief sought.

### B.  Standard of Review

The Federal Arbitration Act ("FAA") unequivocally provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. Accordingly, when dealing with arbitration clauses in contracts, courts are "bound to take notice" of Congress' "strong policy favoring

arbitration before litigation." *J. S. & H. Constr. Co. v. Richmond Cty. Hosp. Auth.*, 473 F.2d 212, 214-215 (5th Cir. 1973). In light of Congress' clear intent, a "court must compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219 (1985); *see also Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019).

The Fifth Circuit follows a two-step process to decide whether to compel arbitration. *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). Specifically, the court must decide (1) whether the arbitration agreement is valid; and (2) whether the claims asserted in the dispute fall within the scope of the arbitration agreement. *Halliburton*, 921 F.3d at 530; see also *Lowrey v. Citigroup Glob. Mkts.*, Civil Action No. 3:10-CV-1823-K, 2011 U.S. Dist. LEXIS 175292 at *4 (N.D. Tex. 2011) (Kinkeade, J.). "Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *Halliburton*, 921 F.3d at 530 (*citing Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). With regard to the second factor, the scope of the agreement is a matter of federal substantive law. *Graves v. BP America, Inc.*, 568 F.3d 221, 222-23 (5th Cir. 2009). "[G]iven strong public policy in favor of arbitration, all doubts as to the scope of the arbitration policy must be resolved in favor of enforcement." *Lowrey,* Civil Action No. 3:10-CV-1823-K at *14.

### C.  The Parties Have a Valid Arbitration Agreement

"To determine whether an agreement to arbitrate is contractually valid, courts apply ordinary state-law principles that govern the formation of contracts." *Lizalde v. Vista Quality Mkts.,* 746 F.3d 222, 225 (5th Cir. 2014); *see also Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). Here, it is undisputed that Texas state law governs as to the validity,

revocability, and enforceability of the arbitration agreement at issue. **Ex. A** at APP 0043; *see also Halliburton*, 921 F.3d at 530.

Under Texas law, "[a]n agreement to arbitrate, like other contracts, must also be supported by consideration." *Lizalde*, 746 F.3d at 225. A "mutual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement." *Lizalde*, 746 F.3d at 225 (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (internal quotations omitted)).

Here, the title of the agreement, plain language of the parties' agreement to arbitrate, and Defendant's signature on the agreement, clearly evidence a mutual agreement by the parties to arbitrate. The agreement, titled "Mutual Agreement to Arbitrate Claims," clearly and unequivocally states the parties "**mutually consent** to the ultimate resolution by arbitration of **all claims or controversies** whether or not arising out of [Defendant's] employment or its termination, that [Plaintiff] may have against [Defendant] or that [Defendant] may have against [Plaintiff], its employees, or agents." **Ex. A** at APP 0042, ¶ 3 (emphasis added). Defendant has clearly agreed to arbitrate the question raised by Plaintiffs' request for a declaratory judgment and all of Defendant's claims against Hermes Law, and "**all its employees and agents**," including but not limited to, ClaimDeck. *Id.* (emphasis added).

There is no reasonable argument but that the parties' mutual arbitration agreement is a valid contract that requires arbitration of all claims between Plaintiffs and Defendant. Consistent with the parties' agreement, the FAA, and interpretive Fifth Circuit jurisprudence, the Court should enter an order requiring Plaintiffs and Defendants to arbitrate, as opposed to litigate, all disputes.

**D.  The parties' claims are within the scope of the binding arbitration agreement.**

Once the movant establishes the existence of a valid arbitration agreement, the Court must determine whether the arbitration agreement covers the plaintiff's claims. The Fifth "[C]ircuit

distinguishes between broad and narrow arbitration clauses." *In re Complaint of Hornbeck Offshore Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). "If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *Id.*; *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 (5th Cir. 1985).

Generally, arbitration agreements containing language such as "any dispute," "any and all disputes," or other similar language are of the broad-type. *Hornbeck*, 981 F.2d at 755; *See also Sedco*, 767 F.2d at 1144; *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985). "Whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. *Mar-Len*, 773 F.2d at 635. This presumption of staying the case in favor of arbitration is "heavy." *Id.* at 636.

In the present case, this Court must stay the case to allow the parties to submit the arbitrability of the parties' claims to an arbitrator. The language present in the arbitration agreement at issue mirrors the broad language in the arbitration agreement of *Sedco* and *Mar-Len*. Specifically, the agreement in this case covers "all claims or controversies." The only claims the arbitration agreement does not cover are claims for unemployment compensation, and certain claims reserved by Plaintiff for unfair competition, disclosure of trade secrets and confidential information. In light of this express carve-out, the intent of the parties to arbitrate all other disputes is clear.

Every claim in this case and the SDNY Complaint arises out of Defendant's employment with Plaintiffs, including Defendant's claims regarding her options to purchase ClaimDeck's stocks. *See* Compl. ¶¶ 61-83; SDNY Complaint ¶¶ 51-83. None of Defendant's claims assert a claim for unemployment compensation and none of Plaintiffs' claims assert a claim for unfair competition, disclosure of trade secrets and confidential information. No parties assert any claims

that are excluded from arbitration under the plain language of the agreement. Therefore, the claims at issue fall squarely within the scope of the agreed arbitration agreement, and this Court should order a stay or dismissal of this case pending arbitration. Alternatively, even if this Court finds the coverage of either party's claims under the arbitration agreement debatable, the heavy presumption in favor of arbitration applies. *See Hornbeck*, 981 F.2d at 755; *Mar-Len*, 773 F.2d at 636. And, as discussed *infra,* the Court should refer any questions of arbitrability to the arbitrator in the first instance.

### E.  The arbitrator(s) decide arbitrability of all claims.

If the Court has any question of arbitrability, it should refer those questions to the arbitrator. A "a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally … should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944. In Texas, "an agreement to arbitrate in accordance with the [American Arbitration Association, also known as the] AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration." *TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 709 (Tex. 2023); *see also Petrofac, Inc. v DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). "[T]he AAA rules are part of the parties' agreement as if they were set forth within the agreement itself." *Id., see also In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007).

Where an arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on arbitrability of a specific claim, the court's power to decide arbitrability transfers to the arbitrator. *Kubala*, 830 F.3d at 202. A delegation provision is an agreement to

arbitrate threshold issues concerning the arbitration agreement. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). The incorporation of "a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202. "In those circumstances, a court possesses no power to decide the arbitrability issue." *Clark v. Nordstrom, Inc.*, Civil Action No. 3:18-CV-2100-D, 2019 U.S. Dist. LEXIS 126244, at \*7 (N.D. Tex. 2019) (Fitzwater, J.) (*quoting Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Here, the parties clearly and unmistakably agreed to delegate "threshold" issues of arbitrability to the Arbitrator. First, the arbitration agreement expressly provides that "[t]he Arbitrator, **and not any federal, state, or local court** or agency, shall have **exclusive authority** to resolve **any dispute** relating to the interpretation, applicability, enforceability or formation of this Agreement." **Ex. A** at APP 0043, ¶ 6  (emphasis added). This provision expressly delegates arbitrability to the Arbitrator, thus only the Arbitrator can decide gateway arbitrability issues in this matter. Further, the arbitration agreement incorporated the AAA's National Rules for the Resolution of Employment Disputes to the parties' mutual agreement to arbitrate. *Id*. The AAA rules provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Am. Arb. Ass'n. R. 6 (2009). Therefore, arbitrability issues are clearly and unmistakably within the scope of the arbitrator's jurisdiction, and this Court should, at a minimum, order a stay of this case pending an arbitrator's decision on the arbitrability of **all** disputes between the parties.

### F.  The Court should compel arbitration of all claims in all courts.

Once the Court determines the arbitration agreement encompasses the asserted claims, it has no discretion but to compel arbitration. *See Dean Witter*, 470 U.S. at 218 (citing 9 U.S.C.A. §

3,4). There is no reasonable argument but that the parties' mutual arbitration agreement is a valid contract that requires arbitration of all claims between Plaintiffs and Defendant. Consistent with the parties' agreement, the FAA, and interpretive Fifth Circuit jurisprudence, the Court should enter an order requiring Plaintiffs and Defendants to arbitrate, as opposed to litigate, all disputes.

## III. SUMMARY OF GROUNDS TO DENY DEFENDANT'S MOTION TO DISMISS

As an initial matter, the Court should strike the exhibits which Defendant attaches as an extraneous exhibits to Defendant's motion to dismiss because the Court's review of a motion to dismiss under Rule 12(b)(6) is limited to the Plaintiff's pleading. While Defendant generally fails to show a basis for dismissal under Rule 12(b)(6), certainly absent consideration of these improper exhibits, Defendant's argument fail as a matter of law and the Court should deny Defendant's motion to dismiss.

Even assuming, *arguendo*, this case somehow falls into what the Fifth Circuit prefers to called a "limited exception" to the general rule that the Court's review of a Rule 12(b)(6) motion to dismiss is limited to the four corners of the complaint and one in which the Court can consider evidence, the Court should deny Defendant's motion. Unless the Court orders the parties to arbitrate, the standards the Fifth Circuit applied in *St. Paul Ins. Co. v. Trejo* 39 F.3d 585 (5th Cir. 1994) to devise a test to determine whether a federal court should exercise its broad discretion to accept or deny jurisdiction over a declaratory judgment action weighs heavily in favor of this Court retaining this lawsuit and denying Defendant's motion to dismiss.

Because the first-to-file rule also demonstrates this Court should hear the dispute and determine the fate of the parallel lawsuit pending in the Southern District of New York, this Court should retain this suit and deny Defendant's motion because Plaintiffs have pled sufficient facts to

establish entitlement to relief under the liberal standard under Rule 12(b)(6). Defendant can then raise any counterclaims here.

## IV.    STANDARD OF REVIEW UNDER RULE 12(B)(6)

To state a claim for relief, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To defeat a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir.1982)) (internal quotations omitted).

When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The "ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). In order to survive a motion to dismiss, the complaint need not contain detailed factual allegations, but "it must provide the plaintiff's grounds for entitlement to relief—including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (footnote and internal quotations omitted)).

## V.   ARGUMENT AND AUTHORITIES

### A.  The Court should strike the extraneous exhibits attached to Defendant's motion.

As an initial matter, the Court should strike the extraneous exhibits Defendant attached to Defendant's motion to dismiss.[1] The Court's review of a motion to dismiss under Rule 12(b)(6) is limited to the "factual allegations within the 'four corners' of the complaint." *Pro Mineral, LLC v. Marietta*, Civil Action No. 3:21-CV-02773-E, 2023 U.S. Dist. LEXIS 38490 at *9 (N.D. Tex. 2023) (Brown, J.) (citing *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011)). In *Collins v. Morgan Stanley Dean Witter*, the Fifth Circuit set forth a limited exception to the general "four corners" rule, under which the Court may consider "extrinsic documentary evidence only if:  (1) the document is attached to the motion to dismiss; (2) the document is referred to in the plaintiff's complaint; and (3) the document is 'central' to the plaintiff's claim." *Antero Res. Corp. v. C & R Downhole Drilling, Inc.*, No. 4:16-CV-00668-Y, 2019 WL 13193898, at *2 (N.D. Tex. July 22, 2019) (Means, J.) (citing *Collins*, 224 F.3d at 498-99). Exs. A-D to Defendant's motion to dismiss clearly fail the *Collins* test.

---

[1]   Defendant attaches four exhibits to her Motion: (1) the complaint she filed against Plaintiffs, Dwayne Hermes, and Andrea Hermes in the SDNY Litigation (*see* Mot. at Ex. A); (2) the litigation hold notice that she sent Plaintiffs on or around February 9, 2024 (*see* Mot. at Ex. B); (3) the updated litigation hold notice she sent Plaintiffs on or around February 24, 2024 (*see* Mot. at Ex. C); and (4) email correspondence she sent to Plaintiffs on or around February 24, 2024 regarding the updated litigation hold notice (*see* Mot. at Ex. D). Defendant relies on the contents of these exhibits throughout the Motion.

### 1. Plaintiffs do not refer to the extraneous exhibits in Plaintiffs' complaint.

Plaintiffs do not refer at all to Defendant's complaint against Plaintiffs, Dwayne Hermes, and Andrea Hermes in the Southern District of New York [Mot. at Ex. A] because **Defendant had not even filed the SDNY lawsuit when Plaintiffs initiated this lawsuit**. Further, Defendant's claim that this Court "may consider [the] communications [in Exs. B-D] in determining the motion to dismiss" because "Plaintiffs incorporate Diaz-Roa's communications concerning her claims in their complaint" is equally inaccurate because Plaintiffs do not refer to any specific communication between the parties, let alone incorporate such communications to the complaint. *See* Mot. at 3 n.5.

### 2. The extraneous exhibits are not central to Plaintiffs' claims.

Although "the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims," *Pro Mineral, LLC*, 2023 U.S. Dist. LEXIS 38490 at *9 (quoting *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011) (Lynn, J.)) (internal quotations omitted), case law suggests that documents are central when they are **necessary** to establish an element of one of the plaintiff's claims. *Kaye*, 453 B.R. at 662. "However, **if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it** into the complaint." *Id.* (emphasis added). Again, here none of the documents Defendant attaches meet either criterion.

While this Court may take judicial notice of the *existence* of the SDNY lawsuit Defendant filed after Plaintiffs filed this lawsuit, the Court should not take judicial notice of the contents of Defendant's SDNY complaint for purposes of resolving Defendant's motion to dismiss. *See Kaye*, 453 B.R. at 664-65 (citing *Anderson v. Dall. Cnty.*, No. 3:05–cv–1248–G, 2007 WL 1148994, at *4 (N.D. Tex. Apr. 18, 2007) (Fish, J.) (emphasis added). "Defendant court may take judicial notice of a document filed in another court . . . to **establish the fact of such litigation and related**

**filings**, but generally cannot take notice of the findings of fact from other proceedings **because those facts are usually disputed and almost always disputable**." Thus, while this Court may take judicial notice of the fact that Defendant has filed a complaint in the SDNY, after Plaintiffs filed this lawsuit, the complaint cannot be incorporated into Defendant's motion, nor may this Court accept facts pleaded in the SDNY complaint as true. *See Kaye*, 453 B.R. at 664-66. *see also Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) (emphasis added). Beyond this necessary limitation, neither the existence of the SDNY complaint nor the facts Defendant pleads in the SDNY complaint are in any way necessary to establish any elements of Plaintiffs' ability to state a claim for relief in this Court. At most, Defendant's later filed SDNY lawsuit does no more than evidence Defendant's preferred venue, but the Plaintiff decides venue of its suit.

Similarly, Exs. B-D, which purports to be communications between the parties regarding Defendant's litigation hold notice, are not central to Plaintiffs' claims because none of those exhibits are necessary to establish any of the elements of Plaintiffs' claims. *See Kaye*, 453 B.R. at 662; *see also*, *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536–37 (5th Cir.2003).

**B.  This Court has broad discretion to grant declaratory relief to Plaintiffs.**

"The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 389 (5th Cir. 2003). Although the discretion is broad, "[c]ourts may not dismiss requests for declaratory judgment relief on the basis of whim or personal disinclination." *Travelers Ins. Co. v. La. Farm Bureau Fed'n*, 996 F.2d 774, 778 (5th Cir. 1993). "[U]nless the district court addresses and balances the purposes of the Declaratory Judgment Act and the factors relevant to the abstention doctrine on the record, it abuses its discretion." *Id.* In deciding whether to dismiss a declaratory judgment action, a federal court must engage in a

sequential three-step inquiry. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). The Court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) how to exercise its discretion to decide or dismiss the action. *See id.*; *see also AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 F. App'x at 319 ("[The Fifth Circuit] provides three inquiries for district courts in determining whether to adjudicate a declaratory judgment action: (1) is it justiciable; (2) does the court have the authority to grant such relief; and (3) should it exercise its discretion to decide the action based on the factors stated in *St. Paul Insurance Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994).").

### 1. An actual controversy exists between the parties.

The existence of an actionable controversy between the parties is undeniable. An action is justiciable when "an actual controversy exists between the parties to the action." *Id.* An actual controversy exists if "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Id.* To be justiciable, a dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Defendant's SDNY suit, which argues the same issue pending here, amply demonstrates an actual justiciable controversy between the parties.

Indeed, an actual controversy existed when Plaintiffs filed suit. "The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based." *Orix Credit Alliance, Inc.*, 212 F.3d at 897. Here, an actual controversy clearly exists because the parties dispute whether Plaintiffs terminated Defendant's employment for cause and whether Defendant's option to purchase stocks of ClaimDeck was therefore contractually

terminated. In fact, Defendant sent Plaintiffs a notice directing Plaintiffs to preserve documents relating to the termination of Defendant's employment in anticipation of litigation related to the very dispute addressed here (and in Defendant's later-filed suit). Compl. at ¶ 65.

### 2.   This Court has the authority to grant declaratory relief to Plaintiffs.

Generally, a federal court has authority over a declaratory judgment action unless "there is a pending state-court proceeding between the parties whose existence divests [the] [c]ourt of its authority to grant declaratory relief." *Neese v. Becerra*, 640 F. Supp. 3d 668, 686 (N.D. Tex. 2022) (Kacsmaryk, J.); see also *Seattle Bank v. Dulworth*, Civil Action No. 4:22-cv-01036-O, 2023 U.S. Dist. LEXIS 230902 (N.D. Tex. 2023) (Ray, J.) ("[N]othing before the Court indicates that there is a pending state-court proceeding that would divest the Court of its authority to grant declaratory relief."); *Primerica Life Ins. Co. v. Cruz*, Civil Action No. 3:21-CV-02419-E, 2023 U.S. Dist. LEXIS 11611 at *16 (N.D. Tex. 2023) (Brown, J.) ("Furthermore, nothing before the Court indicates that there is a pending state-court proceeding between the parties that would divest the Court of its authority to grant declaratory relief.").

"[A federal] district court does not have authority to consider the merits of a declaratory judgment action when (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings." *Sherwin-Williams Co.*, 343 F.3d at 388; *see also AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 320 (5th Cir. 2006); *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993).

Because there is no previously filed cause of action in state court that would divest this Court of its authority to grant declaratory relief, this court clearly has the authority to grant the declaratory relief Plaintiffs seek.

### 3. This Court should exercise its broad discretion to accept jurisdiction over the declaratory relief Plaintiffs seek.

"It is now well-settled in the Fifth Circuit that a district court has discretion over whether to decide or dismiss a declaratory judgment action." *Travelers Ins. Co.*, 996 F.2d at 778. The third step of the inquiry on whether a court should exercise its jurisdiction over a declaratory judgment action is "to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action." The Fifth Circuit has identified three overarching factors to guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit: (1) federalism; (2) fairness; and (3) efficiency. *Sherwin-Williams Co.*, 343 F.3d at 390-91.

Considering these three factors, the Fifth Circuit devised a seven-step test to determine whether abstention is proper in declaratory judgments in *St. Paul Ins. Co. v. Trejo,* 39 F.3d 585 (5th Cir. 1994). Those factors are whether:  (1) "there is a pending state action in which all of the matters in controversy may be fully litigated," (2) "the plaintiff filed suit in anticipation of a lawsuit filed by the defendant," (3) "the plaintiff engaged in forum shopping in bringing the suit," (4) "possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist," (5) "the federal court is a convenient forum for the parties and witnesses," (6) "retaining the lawsuit in federal court would serve the purposes of judicial economy" and (7) "the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending." *Trejo*, 39 F.3d at 590-91 (quoting *Travelers Ins. Co. v. Louisiana Farm Bureau Federation*, 996 F.2d 774, 778 (5th Cir. 1993)). When "there is **no pending state court action**, the first and seventh *Trejo* factors, which address the balance between state and federal courts, weigh against dismissal of this action." *Data Mgmt. v. Control Module*, No. 3:07-CV-0966-O, 2008 U.S. Dist. LEXIS 139476 at *13 (N.D. Tex. 2008) (Sanderson, J.) (emphasis added).

      **a.  Absent a pending parallel state court action, this Court should exercise its discretion to decide this declaratory judgment action.**

The Fifth Circuit views the presence or absence of a pending state court proceeding to be a "threshold issue," such that the absence of a parallel state court proceeding "weighs strongly against dismissal." *Sherwin-Williams*, 343 F.3d at 394. Unlike the case at bar, there was a pending parallel state court action in *Trejo*. "The absence of [a state court action] makes the *Trejo* analysis straightforward" because the Fifth Circuit's concerns about the proper allocation of decision-making between state and federal courts are not implicated. *Canatxx Gas Storage L.T.D. v. Silverhawk Capital Ptnrs., LLC.*, No. H-06-1330, 2006 U.S. Dist. LEXIS 48430 at *13 (S.D. Tex. 2006) (Rosenthal, J.). Because there is no pending parallel state court action which implicates concerns of federalism and comity, this Court should exercise its broad discretion to accept jurisdiction over this declaratory judgment action.

      **b.  There are no inequities against Defendant if the parties litigate the disputes in this forum.**

"The second, third and fourth *Trejo* factors address the fairness aspect of the inquiry," wherein the court weighs whether a party engages in "improper anticipatory litigation" and engages in "abusive forum shopping." *Data Mgmt.*, 2008 U.S. Dist. LEXIS 139476 at *13-14; *see also Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159 (5th Cir. 2015) ("Both speak to the fairness aspect of the *Brillhart/Trejo* inquiry—whether the plaintiff is using the declaratory judgment process to gain access to a federal forum on improper or unfair grounds."). It is well established in the Fifth Circuit that merely filing a declaratory judgment action in a federal court with jurisdiction to hear it in anticipation of other litigation is not in itself improper because declaratory judgment actions are inherently anticipatory. *Sherwin-Williams*, 343 F.3d at 391-92.

Improper reasons for bringing declaratory judgment actions include "subverting the real plaintiff's advantage in state court," *Travelers*, 996 F.2d at 777; bringing a declaratory judgment action when the declaratory judgment defendants had been restricted from filing state court actions, *Sherwin-Williams*, 343 F.3d at 397 n.7, 399; and choosing one forum over another where the difference in forum changes the law that applies to the case. *Id.* at 397 (citing *Mission Insurance Company v. Puritan Fashions Corporation*, 706 F.2d 599, 602 (5th Cir. 1983)).

Instances when a party engages in improper or abusive anticipatory litigation include, but are not limited to, where: (1) a party engaged in bad faith conduct, by inducing an opposing party to delay filing of a lawsuit, so that he could file a preemptive lawsuit; (2) plaintiffs engaged in forum-shopping; or (3) the declaratory judgment action unjustly penalizes a party for its good faith efforts to resolve a dispute out of court. *McLoba, Inc. v. Peregoy*, 2020 WL 10456914 at *3 (E.D. Tex. November 9, 2020). None of these conditions exist in the case at bar, and Defendant has not even suggested otherwise. "In the absence of any evidence that Plaintiff[s] [are] using the declaratory judgment process to improperly gain access to a federal forum or otherwise achieve an unfair advantage," this Court should "decline[] to exercise its discretion to dismiss this action." *Am. Univ. Sys. v. Am. Univ.*, 858 F. Supp. 2d 705, 712 (N.D. Tex. 2012) (Lindsay, J.).

To be sure as to the first consideration, Plaintiffs have not delayed Defendant's lawsuit nor has Defendant made any efforts to resolve this dispute out of court, and Defendant does not allege any delay or interference. In fact, Defendant filed her SDNY complaint two days after Defendant was served in this case. *See* [Doc. 9].

As to the second consideration, the term "forum shopping" refers to a plaintiff's efforts to bring "its declaratory judgment action in search of more favorable law." *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 399 (5th Cir. 2003); *see also Atl. Cas. Ins. Co. v. Ramirez*, 651 F.

Supp. 2d 669, 685 (N.D. Tex. 2008) (Stickney, J.). This simply cannot be the case here because the relevant stock option contracts between the parties designate Delaware law, which will control in arbitration or in any court. Plaintiffs do not stand to gain any advantage by asking a federal court in Texas to interpret those agreements, as opposed to a federal court in New York. Thus, as the Fifth Circuit held in *Sherwin-Williams* 343 F.3d at 399, this factor weighs against dismissal because "[t]he selection of the federal forum in this case did not change the law that would apply…There is no evidence that [Plaintiffs] brought [their] declaratory judgment action in search of more favorable law." *Id.* Considering the contractually agreed choice of law, Plaintiffs simply could not have done so.

Lastly, Defendant has not and cannot establish that inequities exist in allowing Plaintiffs' first-filed suit to proceed. The crux of Defendant's complaint seems to be that, because she is somehow the "proper plaintiff," it would be inequitable for this Court to hear the dispute instead of the federal court located in New York. Mot. at 7-8. However, as the Fifth Circuit made clear in *Sherwin-Williams*, "[a] proper purpose of section 2201(a) is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires."   In the face of Defendant's communication to Plaintiffs directing them to preserve potentially relevant documents, Plaintiffs made the decision to ask a court to affirmatively declare that it had complied with its contractual obligations instead of "waiting to be sued." *Sherwin-Williams,* 343 F.3d at 397 (citing *Texas Employers' Ins. Assoc. v. Jackson*, 862 F.2d 491, 505 (5th Cir.1988)); *see also Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 167 (5th Cir. 2015). No inequities exist from Plaintiffs' valid exercise of its right to seek affirmative declaratory relief.

This court, is in fact the proper forum for this litigation because this district has the closest ties to each of the allegations in this case, as well as those Defendant pled in the SDNY. Both

Plaintiffs have headquarters within the Northern District of Texas. Compl. at ¶¶ 3-4. Plaintiffs and Defendant negotiated and executed the agreements at issue in this case in part in Dallas County, Texas, with the expectation Defendant would work in Dallas. *Id.* at ¶ 9. Indeed, Defendant worked full-time at Hermes Law's offices in Dallas before attending Yale, *id.* at ¶ 10, and Defendant often traveled to Dallas to work in Hermes Law's offices during some school holidays while attending graduate school. *Id.* at ¶ 17. Defendant fails to demonstrate a single reason why a New York federal court is a more appropriate forum.

### c. Litigating any lawsuit in this forum is most efficient because this is where a majority of the witnesses and evidence are located.

"The fifth and sixth *Trejo* factors consider convenience and the desire to avoid duplicative or piecemeal litigation where possible." *Sherwin-Williams,* 343 F.3d at 390-91. Specifically, the sixth *Trejo* factor – judicial economy – "implicate[s] concerns about federalism and comity … when duplicative litigation could produce conflicting judgments on matters of state law." *Koch Project Sols., L.L.C. v. All. Process Partners, L.L.C.*, No. 21-20093, 2022 U.S. App. LEXIS 31355, at *17 (5th Cir. 2022). Once again, because there is no pending parallel state court action, there are no risks of conflicting judgments on matters of state law.

Further, since Defendant seems to have initiated action in New York *only* because Defendant lives in New York, this district is the most convenient forum for all parties and witnesses. All parties to this proceeding have a connection to this district. For example, both Plaintiffs are headquartered in Dallas, Texas. (Compl. ¶¶ 3-4.)  Additionally, Defendant lived in Dallas during the first years of her employment with Hermes Law P.C. (*id.* at ¶ 10), and she routinely travelled back to the district while working for Plaintiffs (*id.* at ¶ 17). While Plaintiffs maintain that this district is the most convenient forum to hear the dispute, *Trejo* merely requires that this forum "is convenient for all parties." *Admiral Ins. Co. v. Little Big Inch Pipeline Co.,*

*Inc.*, 496 F. Supp. 2d 787 (W.D. Tex. 2007). There can be no doubt that, given Defendant's ownership of property in the Dallas area, Defendant's employment history with both Dallas-based companies, and the location of potential witnesses and relevant documents and things, this forum is convenient for not only Plaintiffs and witnesses, but also Defendant.

### C. Under the first-to-file rule, this Court should hear the disputes and determine the fate of the SDNY lawsuit.

Under the Fifth Circuit's first-to-file rule, the court where the action was first filed is the appropriate court to hear the dispute and "determine whether subsequently filed cases involving substantially similar issues should proceed." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999) (internal quotations omitted); *see also Wells Fargo Bank, N.A. v. W. Coast Life Ins. Co.*, 631 F. Supp. 2d 844, 846–47 (N.D. Tex. 2009) (Lynn, J.). The "first to file rule not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated."[2]  *Cadle Co.*, 174 F.3d at 606 (quotations omitted); *see also Wells Fargo*, 631 F. Supp. 2d at 846-47.

While this Court has recognized an exception to the "first-to-file" rule where "a party brings a declaratory judgment action in anticipation of litigation by its adversary," *Doubletree*

---

 Once the court in which the subsequent action was filed "determines that issues in the suits might substantially overlap, the proper course of action is for the [second-filed] court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Wells Fargo Bank, N.A. v. W. Coast Life Ins. Co.*, 631 F. Supp. 2d 844, 846–47 (N.D. Tex. 2009).  Here, even according to Defendant, "[t]his suit and the SDNY Suit "involve the exact same determination[s]." (Mot. at 6 (quotations and citations omitted)).  Thus, once the SDNY confirms that the issues in the two cases "might substantially overlap, the proper course of action" would be that court to transfer the SDNY Litigation to this Court "to determine which case should, in the interests of sound judicial administration and judicial economy, proceed."  *Cadle*, 174 F.3d at 606.

*Partners, L.P. v. Land Am. Am. Title Co.*, No. 3-08-CV-1547-O, 2008 WL 5119599, at *3 (N.D. Tex. Dec. 3, 2008) (Kaplan, J.), "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it...is not in itself improper anticipatory litigation or otherwise abusive forum shopping." *Doubletree*, 2008 WL 5119599, at *3 (quoting *Sherwin-Williams,* 343 F.3d at 391) (cleaned up). In "deciding whether a related declaratory judgment action in another venue is an improper anticipatory suit for purposes of the 'first-to-file' rule, the court should consider, inter alia, whether a party engaged in bad faith conduct,[3] by inducing an opposing party to delay filing of a lawsuit, so that he could file a preemptive lawsuit." *Doubletree*, 2008 WL 5119599, at *3 (quoting *Chapa v. Mitchell,* No. A-05-CV-769-JN, 2005 WL 2978396 at *2 (W.D. Tex. Nov.4, 2005)) (citing *Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661, 663 (5th Cir. 1967)) (internal quotations omitted).

Here—as in *Doubletree*—there is "no allegation, much less proof, of bad faith or improper motive on the part of" Plaintiffs in filing this declaratory judgment action. 2008 WL 5119599, at *3. Indeed, the facts presented here leave even less question than those this Court addressed in *Doubletree* in which the declaratory judgment action plaintiffs waited more than five weeks after being threatened with litigation before seeking declaratory relief, yet this Court found no bad faith. Here, Plaintiffs waited almost five weeks—exactly four weeks and six days—after Defendant sent her initial threat of litigation before Plaintiffs filed this lawsuit. Furthermore, unlike in other cases, Plaintiffs did not demonstrate bad faith by using "settlement negotiations as a ruse to induce

---

[3] Other Fifth Circuit district courts have identified two separate exceptions to the first-to-file rule—the bad faith exception and the anticipatory-filing exception. *Walsh v. Peterson*, No. 4:21-CV-867, 2022 WL 3088086, at *3 (E.D. Tex. Aug. 3, 2022) (quoting *In re Toyota Hybrid Brake Litig.*, 2020 WL 6161495, at *7).  In *Doubletree*, this Court conducted the bad faith analysis within the context of the anticipatory-filing exception analysis, which is how Plaintiffs address this issue herein.

plaintiff to delay the filing of its lawsuit." *Id.; but see Chapa,* 2005 WL 2978396 at *2 (declining to apply "first-to-file" rule where declaratory judgment plaintiff used settlement negotiations to "induce [d]efendants into believing he was committed to resolving [the] dispute out of court"); *Gemmy Industries Corp. v. Blue Ridge Designs, Inc.,* No. 3-99-CV-0008-G, 1999 WL 58785 at *2 (N.D. Tex. Feb.1, 1999) (Fish, J.) (declining to apply "first-to-file" rule where declaratory judgment plaintiff told defendant it would comply with defendants' cease-and-desist requests, while simultaneously preparing its declaratory judgment action in secret)). Consistent with this Court's precedent, including in *Doubletree,* Plaintiffs' lawsuit does not constitute an improper anticipatory filing so as to justify dismissal.

## VI.   CONCLUSION

Based on the foregoing, the Court should order arbitration and prohibit all litigation, in any forum, pending the outcome of the parties' agreed arbitration to resolve all disputes, If the Court does not compel arbitration, it should disregard Defendant's improper attachment of and references to "evidence" in connection with Defendants motion to dismiss, deny Defendant's motion to dismiss, and, consistent with the first-to-file rule, order that Defendant present all claims Defendant may have in this lawsuit.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/ Nikki Britten*

William S. Helfand
Attorney-In-Charge
Texas Bar No. 09388250
Bill.Helfand@lewisbrisbois.com
Lamisa I. Chowdhury
Texas Bar No. 24110033
Lamisa.Chowdhury@lewisbrisbois.com
Courtney Nichole "Nikki" Britten
Texas Bar No. 24110810
Nikki.Britten@lewisbrisbois.com

ATTORNEYS FOR PLAINTIFFS HERMES
LAW, P.C., AND SYZYGY LEGAL TECH, INC.
D/B/A

OF COUNSEL:

LEWIS BRISBOIS BISGAARD & SMITH, LLP
William S. Helfand
Texas Bar No. 09388250
Bill.Helfand@lewisbrisbois.com
Lamisa I. Chowdhury
Lamisa.Chowdhury@lewisbrisbois.com
24 Greenway Plaza, Suite 1400
Houston, Texas  77046
Telephone: (713) 659-6767
Fax: (713) 759-6830

And

Courtney N. "Nikki" Britten
Texas Bar No. 24110810
Nikki.Britten@lewisbrisbois.com
2100 Ross Ave. Ste 2000
Dallas, Texas 75201
Telephone: (214) 722-7100
Fax: (214) 722-7111

## Certificate of Service

I certify that on May 13, 2024, I served the foregoing document to all counsel of record

in accordance with the ECF local rules.

/s/ *Nikki Britten*__
Nikki Britten